179 So. 442

**BRADFORD v. LOUISIANA PUBLIC SERVICE COMMISSION et al.**

No. 34418.

Feb. 7, 1938.

Rehearing Denied March 7, 1938.

Breazeale & Sachse, of Baton Rouge, and Lemle, Moreno & Lemle and Posey R. Bowers, all of New Orleans, for appellants.

Gaston L. Porterie, Atty. Gen., and Milo B. Williams, Asst. to Atty. Gen., for appellee Louisiana Public Service Commission.

Robert L. Garrett, of Shreveport, for appellee Herrin Motor Lines, Inc.

PONDER, Justice.

The plaintiff, Millard F. Bradford, filed suit in the lower court against the Louisiana Public Service Commission and the Herrin Motor Lines, Inc., attacking an order of the Louisiana Public Service Commission granting a certificate of public convenience and necessity to the Herrin Motor Lines, Inc. There were three other suits filed in the lower court by the plaintiff, the Yazoo & Mississippi Valley Railroad Company, and the Mississippi Valley Transpor-

tation Company against the Herrin Motor Lines, Inc., the Silver Fleet of Memphis, Inc., and the Louisiana Public Service Commission attacking orders of the Louisiana Public Service Commission granting certificates of public convenience and necessity to the Herrin Motor Lines, Inc., and the Silver Fleet of Memphis, Inc. The issues involved in all four of these cases being identical, they were consolidated in the lower court for the purpose of trial by agreement of all parties to the suits. The lower court rendered separate judgments in favor of the defendants, from which judgments the plaintiff appeals. All four cases were consolidated for submission to this court by agreement of all parties. Bradford v. Louisiana Public Service Comm., 189 La. 339, 179 So. 446; Yazoo & M. V. R. Co. v. Louisiana Public Service Comm., 189 La. 340, 179 So. 447; Id., 189 La. 341, 179 So. 447.

The four cases were submitted in the lower court on the following agreement and statement of facts, viz.:

"Counsel agree that the only issue urged before the court in the present matter on the records in No. 2461 and 2453 of the Louisiana Public Service Commission is whether or not section 4 of Act No. 292 of 1926, and Act No. 292 of 1926 in its entirety, empowers the Louisiana Public Service Commission to issue a certificate of public convenience and necessity over a route where an existing certificate holder is outstanding and in operation, without giving the existing certificate holder a reasonable opportunity to provide such additional and adequate service over said route as was found convenient and necessary at said hearing."

The Herrin Motor Lines, Inc., and the Silver Fleet of Memphis, Inc., applied to the Louisiana Public Service Commission for certificates of public convenience and necessity to operate motor truck lines for the carrying of freight for hire over the "Airline Highway" (U.S. 61) between Baton Rouge and New Orleans, La. There were other motortruck lines operating over this route under certificates of public convenience and necessity from the Louisiana Public Service Commission. When the Herrin Motor Lines, Inc., and the Silver Fleet of Memphis applied for the certificates, a hearing was held by the Public Service Commission and it was found by the Louisiana Public Service Commission that additional and adequate service over the route was convenient and necessary. The certificates were issued to the Herrin Motor Lines, Inc., and to the Silver Fleet of Memphis, Inc., without giving the motor carriers, who held existing certificates over the route, a reasonable opportunity to provide the additional service.

The plaintiff contends that the commission cannot issue a certificate over the route without first giving the existing certificate holder a reasonable opportunity to provide the additional and adequate service. The finding of the commission that additional and adequate service is necessary over the route is not questioned herein. The plaintiff in support of his contention relies mainly on the second paragraph of section 4 of Act No. 292 of 1926.

The part of Act No. 292 pertinent to this decision reads as follows:

"Section 3. No person or corporation shall henceforth exercise any right or privilege, under any franchise or permit hereafter granted, to operate a motor carrier in any parish or between any municipality or municipalities over whose other public utilities the Louisiana Public Service Commission now has jurisdiction by law, without first having obtained from the Louisiana Public Service Commission a certificate that public convenience and necessity require the exercise of such right or privilege. Such certificate shall be issued only after written application for the same has been made. Every applicant for a certificate shall file in the office of the Louisiana Public Service Commission, together with his written application, such information as shall be required by the Louisiana Public Service Commission; and such evidence as the Commission may require to show that such application has received the required consent, franchise or permit of the proper parish, municipal or other local public authority should said consent, franchise or permit be required under any presently existing laws.

"The Louisiana Public Service Commission shall have power, after hearing and investigation as to the financial ability and good faith of the applicant and the necessity for such service over and along the proposed route, reasonable notice of which hearing shall be given to applicant and competing common carriers, to issue said certificate as prayed for, or to refuse to issue the same, or to issue the same for a portion only of the contemplated route.

"Every motor carrier actually operating, in good faith, at the time this act becomes effective, shall file with the Commission an affidavit showing its principal place of business, and full information concerning its physical property, the route over which it has been operating, the schedule or schedules, together with a map of its route, showing the number of miles or route in each municipality and parish into, through or along which such route runs or extends, with a statement that it has been actually operating, over such route or routes in good faith, together with the liability insurance policy or bond, or policies or bonds, required under Section 6 of this Act, and thereupon, if the Commission shall find the statements in said affidavit to be true, a certificate of public convenience and necessity shall issue to such motor carrier, and such motor carrier may continue to operate and shall be governed in all respects as if such motor carrier had made a written application.

"Section 4. The Commission may at any time, after due notice to the grantee of any certificate and like notice to any competing carrier an opportunity to be heard thereon had, for good cause, suspend, revoke, alter or amend any certificate issued under the provisions of this Act.

"On finding of the Commission that any motor carrier does not give convenient and necessary service in accordance with the rules and regulations and orders of the Commission, such motor carrier shall be given a reasonable time to provide such

service before any existing certificate is cancelled, or a new one granted over the route mentioned in the finding and order rendered after due hearing by the Commission."

██ Section 3 of the act deals with the issuance of certificates. The second paragraph of this section leaves it to the discretion of the commission whether a certificate is issued or not. It provides that the commission shall have "power * * * to issue said certificate as prayed for, or to refuse to issue the same, or to issue the same for a portion only of the contemplated route." Even after the hearing provided for in this paragraph and where there is a necessity for such service, the commission is not compelled to issue the certificate. Under the provisions of this paragraph, a certificate can be issued to an applicant on a route where there are competing common carriers. There is no restriction placed on the commission under section 3 as to the number of certificates that may be issued over a route. It is evident that the Legislature contemplated that there would be a necessity for additional service over a route and that the commission would have the authority to issue a certificate to an applicant over the route after the hearing provided for and the necessity for the service where there were competing carriers on the route without giving the competing carriers an opportunity to provide the service.

██ Paragraphs 1 and 2 of section 4 of the act deals with suspension, revocation, cancellation, alteration, and amendment of any certificate. The commission is invested with large discretionary powers with regard to that subject-matter because for good cause the commission may suspend a certificate, revoke it, alter it, or amend it. The first paragraph of the section also contemplates competing carriers on a route for it provides that notice be given to any competing carrier. The second paragraph of the section undoubtedly has reference to the same subject-matter that is contained in the first paragraph because it sets forth a cause for which a certificate can be canceled and provides that such carrier be given a reasonable time to supply the service before its certificate is canceled. The first paragraph of the section provides for a hearing to ascertain whether there is good cause to revoke, etc., a certificate and following immediately in the next paragraph the words are used, "On finding of the commission," which clearly shows that the finding is the result of the hearing provided for in the first paragraph. At the conclusion of the second paragraph we find another reference to the finding of the commission and reference to the order rendered after due hearing by the commission which we take it refers to the hearing provided for in the first paragraph. This second paragraph has reference to and applies only to a motor carrier whose certificate is about to be canceled by the commission. The use of the words "such motor carrier" and "such service" clearly show that it refers to the motor carrier whose certificate is about to be canceled. No one is allowed to render, under the provisions of this paragraph, such service except such motor carrier. The service mentioned in this para-

graph "Convenient and necessary service" is qualified by the words "In accordance with the rules and regulations and orders of the commission." This is the service that is required by the commission. This clearly shows that the commission had the authority to regulate and govern the service to be rendered. The plaintiff's whole contention is that no new certificate can be granted until the existing grantee is given a reasonable time to provide the service the commission finds necessary after a hearing thereon. The plaintiff's certificate is not sought to be canceled for failure to provide the service required by the commission. Therefore, the plaintiff would not come under the provisions of this paragraph. The words "Or a new one granted over the route" used in the paragraph clearly mean the granting of a new certificate in lieu of the one that is canceled. We find that the words "or a new one granted over the route" are followed by these words "mentioned in the finding and order rendered after due hearing by the commission." This undoubtedly has reference to the finding and order under the hearing provided for in the first paragraph of section 4. It contemplates the issuance of a new certificate in the place of the one ordered canceled. Ordinarily, the words "and" and "or" are in no sense interchangeable. However, in the instant case, in view of the wording of this paragraph and the qualifying language used immediately after, the words "or a new one granted" clearly show that it contemplates a new certificate granted in lieu of the one that the commission had ordered canceled.

"Ordinarily the words 'and' and 'or' are in no sense interchangeable terms, but, on the contrary, are used in the structure of language for purposes entirely variant, the former being strictly of a conjunctive, the latter of a disjunctive, nature. Nevertheless, in order to effectuate the intention of the parties to an instrument, a testator, or a legislature, as the case may be, the word 'and' is sometimes construed to mean 'or'. This construction, however, is never resorted to except for strong reasons and the words should never be so construed unless the context favors the conversion; as where it must be done in order to effectuate the manifest intention of the user; and where not to do so would render the meaning ambiguous, or result in an absurdity; or would be tantamount to a refusal to correct a mistake." 3 Corpus Juris Secundum, And, 1068.

It is well established that in construing a statute the object is to ascertain the legislative intent. This doctrine was recently reaffirmed in the case of Gremillion v. Louisiana Public Service Commission, 186 La. 295, 172 So. 163.

If the plaintiff's construction of the second paragraph of section 4 were correct, it would be in direct conflict with the second paragraph of section 3. This would bring about an absurd result. It is well established that in the construction of statutes absurd results should be avoided, and when the literal construction would produce such a result, the letter of the law must give way to its spirit and the statute should be construed so as to produce a reasonable re-

sult. This doctrine was also reaffirmed in the recent case of Gremillion v. Louisiana Public Service Commission, supra.

For the reasons assigned, the judgment is affirmed at appellant's cost.

ODOM, J., dissents.

HIGGINS, J., absent.

O'NIELL, C. J., concurs in the decree.