| iWALTZER, J.
The Orleans Parish School Board appeals an adverse judgment in a suit by *804 various employees seeking past wages. The appeal presents two legal issues, and the parties have stipulated to the facts. We must determine whether to overrule a prior decision of this court, Brooks v. Orleans Parish School Board, 550 So.2d 1267 (La.App. 4 Cir.1989), writ denied 553 So.2d 466 (La.1989). Moreover, we must decide whether the trial court erred in failing to apply the one year prescriptive period applicable to actions ex delicto.
FACTS AND HISTORY OF THE CASE
The plaintiffs include various salaried employees of the Orleans Parish School Board. The Board reduced the number of months that these employees worked for the 1986-87 school year, to effect a reduction in their salaries for fiscal reasons. The Board notified the plaintiffs of the reduction in their work year on 1 July 1986, and the employees filed suit to recover the reduction in their salaries on 27 June 1989.
The Board filed an exception of prescription, arguing that a one year libera-tive prescription period applies. The employees opposed the exception arguing that either the three year prescription period or the ten year prescription 12applies. The parties stipulated to the facts of the case, and the trial court heard the matter. The trial court denied the peremptory exception of prescription and awarded various plaintiffs the amount of the reduction in their respective salaries. The Board appeals the judgment.
On appeal, the Board assigns as error two questions of law: whether LSA-R.S. 17:431 protects a reduction in work year and what prescriptive period applies to these claims.
LSA-R.S. 17:431
The Board argues that LSA-R.S. 17:431 does not protect its employees from salary reductions, by reducing the employees’ work year. In essence, the Board asks this court reconsider a prior decision, Brooks v. Orleans Parish School Board, 550 So.2d 1267 (La.App. 4 Cir.1989), writ denied 553 So.2d 466 (La.1989). The facts in this case and Brooks are identical. The cases are not distinguishable. The Board does not argue that the facts differ. Moreover, they do not explicitly state that we must overrule Brooks to find that LSA-R.S. 17:431 does not provide a cause of action to these employees. They rely on two subsequent opinions of this court to argue that Brooks has been effectively overruled. Guillory v. Orleans Parish School Board, 597 So.2d 96 (La.App. 4 Cir.1992) and Trouard v. Orleans Parish School Board, 96-0845 (La.App. 4 Cir. 5/21/97), 695 So.2d 524.
In Brooks, this court held that LSA-R.S. 17:431 protects the employees’ work year. Supra, at 1272. The court reasoned that,
The clear language of the statute provides: “no parish school system ... shall pay ... an annual salary which amounts to less than the amount that was paid by such school system to that employee in the immediately proceeding year.” No language is contained in this statute which would allow the school board to unilaterally effect a reduction in salary by reducing the employee’s work year. If the statute makes no provision for a reduction in pay because of a | ¡^reduction in the work year due to fiscal constraints, this problem is properly addressed to the Legislature, not to this Court.

Id.

In Guillory, two Board employees were reassigned to “tenure track” teaching positions, at reduced salaries, from “non tenure track” federally funded positions, to accommodate a reduction in federal fund *805 ing. Supra at 97. The court reasoned that,
First, nothing in La.R.S. 17:431 prevents a school board from discharging a non-tenured employee from an administrative position. Upon terminating plaintiffs’ positions in the Chapter 1 Program, the OPSB was under no obligation to transfer the plaintiffs to alternate positions. By electing to transfer the plaintiffs to tenure tract teaching positions, rather than totally terminating their employment, the OPSB did not inadvertently subject itself to the provisions of La.R.S. 17:431. To hold otherwise would prevent local school boards from dealing flexibly with changes in federal funding over which they have no control.
Second, La.R.S. 17:431 must be interpreted in pari materi with the tenure laws and the rationale of Hayes. In Hayes the court’s underlying reasoning is that the legislature intended to protect those positions in the regularly maintained school system since they “were sustained by recurring revenues, over which they [the school system] had a measure of control.” Hayes, supra 237 So.2d at 684. The absurd result postured by the trial court is well taken. Applying La.R.S. 17:431 to employees in federally funded programs would mean that their status would not be “tenure protected,” but their salaries would.
Guillory, supra at 98. Although the court did not explicitly distinguish Brooks, we find the facts in these cases are easily distinguished. In both Brooks and this suit, the Board funded the affected positions through state or local revenues. Supra at 1268. The crux of the holding in Guillory concerned the source of the funding for the positions effected by the Board’s actions.
In Trouard, this court explicitly distinguished Brooks, and we find no reason to disagree with the distinctions drawn.
|4In Brooks, this court determined that R.S. 17:431 prohibited pay reductions resulting from the elimination of a pay supplement and from the reduction of the work-year for particular employees who had been reassigned when a special program was terminated. The personnel actions taken in that case, which were found to be violative of the statute, resulted from the unilateral and involuntary termination of these employees’ original positions. In contrast, Mr. Trouard voluntarily accepted what he knew to be a temporary promotion, with the full understanding that he could be returned, at any time, to his lower paying job of budget Analyst at grade-12, step-7. When the permanent Accounting Manager’s vacancy was advertised as a downgraded position, he chose to apply for and accept the job. Mr. Trouard’s reliance on Brooks is misplaced.
Trouard, supra 527.
Neither Guillory nor Trouard convinces us that the court erred in its conclusion in Brooks. The facts in Guillory and Trouard are easily distinguished. Moreover, the parties concede that the facts in Brooks and the facts before us are identical. We are not convinced that the court erred in Brooks by finding that LSA-R.S. 17:431 protects employees’ salaries from reductions by a reduction in work year.
PRESCRIPTION
The Board argues that the trial court erred by failing to sustain the exception of prescription and refusing to apply the one year prescription period to actions under LSA-R.S. 17:431. The Board argues that this action is one in tort, and therefore, the one year liberative prescription period applies. LSA-C.C. art. 3492. *806 The employees argue that either a three year, under LSA-C.C. art. 3494, or ten year, under LSA-C.C. art. 3499, liberative prescription period applies. LSA-C.C. art. 3494 provides, in pertinent part,
The following actions are subject to a liberative prescription of three years:
(1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition |fifees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board.
The Board argues that the three year period does not apply, since the employees do not seek “compensation for services rendered.” The Board complains that it reduced the salaries by reducing the work year, and thus the employees seek unearned wages. However, these employees worked for the school year 1986-87. They filed suit to recover the reduction in their wages for that school year. Although the Board reduced the work year to reduce salaries, this suit involves a claim for wages, guaranteed by LSA-R.S. 17:431. Such a claim for back wages is governed by the three year prescriptive period. New Orleans Firefighters Local 632, AFL-CIO v. City of New Orleans, 99-1995, p. 6 (La.App. 4 Cir. 6/7/00), 767 So.2d 112, 115. We affirm the trial court’s denial of the peremptory exception of prescription.
CONCLUSION
For the above reasons, we affirm the trial court’s judgment.
AFFIRMED.