KNOLL, Justice.
| ¡This criminal matter presents the res nova issue of whether a second arrest without a conviction for the charge of operating a vehicle while intoxicated (DWI) constitutes “a second violation of R.S. 14:98,” which triggers the provisions of La.Rev.Stat. § 32:667(I)(l)(a) mandating the installation of an ignition interlock for the accused’s refusal to submit to a chemical breath test following his arrest.
Plaintiffs license was suspended as a result of his refusal to take a breath test after his second arrest for DWI. When plaintiff was acquitted of this second DWI charge, he filed a rule to show cause why his license should not be immediately reinstated. Defendant-in-rule, Louisiana Department of Public Safety and Corrections, Office of Motor Vehicles (OMV), agreed plaintiff was entitled to have his license reinstated, but contended an ignition interlock device must be installed on his vehicle under La.Rev.Stat. § 32:667(I)(l)(a) because of his refusal to submit to chemical testing after being arrested a second time for DWI. The District Court reinstated plaintiffs license without requiring an ignition interlock device, and the court of appeal affirmed, interpreting “a second violation” as requiring a prior conviction. We granted writ to determine the correctness vel non of the appellate court’s reasoning. Boudreaux v. Louisiana Dept. of Public Safety and Corrections, 12-0239 (La.5/4/12), 88 So.3d. 468. For the following reasons, |2we find a second arrest on the charge of DWI is merely an allegation of a second violation, and does not constitute “a second violation of R.S. 14:98” in and of itself. We affirm the lower courts’ judgments reinstating plaintiffs license without restriction.
FACTS
On September 22, 2007, plaintiff was arrested on the charge of operating a vehicle while intoxicated. He completed a pre-trial intervention program, and the district attorney’s office dismissed the charges. Then, on September 19, 2009, plaintiff was arrested on a second DWI charge. He was read his rights relating to the chemical test for intoxication and signed a form stating the consequences for failure to take the test. As a result of his refusal to provide a sample for the breath test, the OMV suspended plaintiffs license for 365 days pursuant to La.Rev. Stat. § 32:667(B)(2)(a)[1] Plaintiff timely requested, and was granted, an administrative hearing to contest the proposed suspension. The administrative law judge affirmed the suspension of his license on January 12, 2010. Thereafter, plaintiff filed a petition for injunction and judicial review with the 19th Judicial District Court.
In conjunction with plaintiffs petition, on February 19, 2010, the District Court granted an ex parte order restraining the OMV from withholding or suspending plaintiffs license. Prior to the hearing on the matter, plaintiff was found not guilty of operating a vehicle while intoxicated. Subsequent to his acquittal, plaintiff filed a rule requiring the OMV to show cause why *25 his driver’s license suspension should not be ruled invalid and why his license should not be lsimmediately reinstated and returned to him, without restriction or condition, in accordance with La.Rev.Stat. § 32:667(H)(1).
In response, the OMV argued, because this was plaintiffs second arrest for a violation of La.Rev.Stat. § 14:98 and because after his second arrest he refused to submit to a chemical test for intoxication, La.Rev.Stat. § 82:667(I)(l)(a) requires an ignition interlock device be installed on plaintiffs vehicle as a condition of the reinstatement of his license by providing, in pertinent part:
an ignition interlock device shall be installed in any motor vehicle operated by any of the following persons whose driver’s license has been suspended in connection with the following circumstances as a condition of the reinstatement of such person’s driver’s license:
(a) Any person who has refused to submit to an approved chemical test for intoxication, after being requested to do so, for a second violation of R.S. 14:98 ... and whose driver’s license has been suspended in accordance with law.
La.Rev.Stat. § 32:667(1)(1)(a). Plaintiff contended, however, he was never convicted of operating a vehicle while intoxicated after the first arrest; therefore, he has not yet had a first violation under La.Rev.Stat. § 14:98 and is not required to have an interlock device placed in his vehicle.
After a hearing, the District Court signed a judgment reinstating plaintiffs driver’s license, without restriction. In its oral reasons, the District Court explained:
The first part makes the court look at the language utilized to determine what in the world is a second violation of R.S. 14:98. Is it an allegation that he’s violated, which would be an arrest and a charge, or is it a conviction? The mere allegation of violation must be proved by the state in order to establish a violation, and since this statute specifically says, rather than a second arrest, a second violation of the statute, he’s not yet had a first violation of the statute at the time he refused that test, and therefore, does not meet the requirements set forth in 32:667(I)(l)(a), and therefore, would not be required to have ... the interlock device placed on his car. I can only surmise that was the intent, that it would be for a second violation being a violation — of an established violation being a conviction. Otherwise, because there are other statutes within that title that used the word “arrest,” had the ^Legislature intended it to be the mere arrest on suspicion or violation of it, then they could have used that language.
On appeal, the Court of Appeal, First Circuit affirmed, reasoning:
After Boudreaux’s first arrest, he was alleged to have violated the statute; however, he was not convicted of a violation of the statute. An actual violation must be proven. Therefore, under the clear language of the statute, Boudreaux never had a first violation of La. R.S. 14:98 and does not fit the persons listed under La. R.S. 32:667(I)(1)(A). Further, Part XIV under Chapter Three of Title 32 in the Louisiana Revised Statutes, titled “Tests for Suspected Drunken Drivers,” utilizes express language in sections 667(A) and 666(A)(3), focusing on when a law enforcement officer places a person “under arrest for a violation of R.S. 14:98.... ” The legislature could have used this same language in section 667(I)(l)(a) if it had contemplated that a second arrest and refusal to take the breath test would be sufficient to bring about the consequences of requiring an interlock device as a condi *26 tion of reinstatement of a person’s driver’s license. Obviously, the legislature intended otherwise.
Boudreaux v. Louisiana Dept. of Public Safety and Corrections, 11-1087, p. 5 (La.App. 1 Cir. 12/21/11), 80 So.3d 767, 770.
It now falls to this Court to determine the proper interpretation and application ofLa.Rev.Stat. § 32:667(I)(l)(a).
DISCUSSION
In all cases of statutory interpretation, legislative intent is the fundamental question, and the well-established rules of statutory construction are designed to ascertain and enforce the intent of the statute. State v. Campbell, 03-3035, p. 7 (La.7/6/04), 877 So.2d 112, 117. The interpretation of any statutory provision starts with the language of the statute itself. Oubre v. Louisiana Citizens Fair Plan, 11-0097, p. 11 (La.12/16/11), 79 So.3d 987, 997. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. Civ.Code art. 9; La.Rev.Stat. § 1:4; In re Clegg, 10-0323, p. 20 (La.7/6/10), 41 So.3d 1141, 1154. Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. La. Civ.Code art. 11; La.Rev.Stat. § 1:3; see also Snowton v. Sewerage and Water Bd., 08-0399, pp. 5-6 (La.3/17/09), 6 So.3d 164, 168.
Words and phrases must be read with their context and construed according to the common and approved usage of the language. La.Rev.Stat. § 1:3. Every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. Colvin v. Louisiana Patient’s Compensation Fund Oversight Bd., 06-1104, p. 6 (La.1/17/07), 947 So.2d 15, 19; Moss v. State, 05-1963, p. 15 (La.4/4/06), 925 So.2d 1185, 1196. Consequently, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and sur-plusage if a construction giving force to and preserving all words can legitimately be found. Oubre, 11-0097 at 12, 79 So.3d at 997.
It is also a well-established tenet of statutory construction that criminal statutes are subject to strict construction under the rule of lenity. State v. Carr, 99-2209, p. 4 (La.5/26/00), 761 So.2d 1271, 1274. Criminal statutes, therefore, are given a narrow interpretation, and any ambiguity in the substantive provisions of a statute as written is resolved in favor of the accused and against the State. State v. Becnel, 93-2536, p. 2 (La.5/31/96), 674 So.2d 959, 960. Bound by a strict interpretation of the plain language of its criminal provisions, we now turn to the statute at issue.
In its entirety, La.Rev.Stat. § 32:667(I)(1) sets forth four aggravating factors, which, if present, would require the installation of an ignition interlock device before an offender’s suspended license could be reinstated:
UXl) In addition to any other provision of law, an ignition interlock device shall be installed in any motor vehicle operated by any of the following persons whose driver’s license has been suspended in connection with the following circumstances as a condition of the reinstatement of such person’s driver’s license:
(a) Any person who has refused to submit to an approved chemical test *27 for intoxication, after being requested to do so, for a second violation of R.S. 14:98 or 98.1 or a parish or municipal ordinance that prohibits operating a vehicle while intoxicated and whose driver’s license has been suspended in accordance with' law.
(b) Any person who has submitted to an approved chemical test for intoxication where the results indicate a blood alcohol level of 0.08 percent or above and whose driver’s license has been suspended in accordance with the law for a violation occurring within five years of the first violation.
(c) Any person who is arrested for a violation of R.S. 14:98, R.S. 14:98.1, or a parish or municipal ordinance that prohibits operating a vehicle while intoxicated and is involved, as a driver, in a traffic crash which involves moderate bodily injury or serious bodily injury as defined in R.S. 32:666(A).
(d) Any person who is arrested for a violation of R.S. 14:98, R.S. 14:98.1, or a parish or municipal ordinance that prohibits operating a vehicle while intoxicated and a minor child twelve years of age or younger was a passenger in the motor vehicle at the time of the commission of the offense.
La.Rev.Stat. § 32:667(I)(1).
The aggravating factor relevant herein is contained in subsection (a), “refusfel] to submit to an approved chemical test for intoxication, after being requested to do so, for a second violation of R.S. 14:98.... ” At issue is the phrase “a second violation of R.S. 14:98” as emphasized above, or rather, more specifically, what constitutes a second violation.
The OMV, on one hand, argues “violation” means arrested and charged with a crime. Plaintiff, on the other hand, argues, and the lower courts agreed, that violation, as used in the statute, requires a conviction for operating a vehicle while intoxicated.
17Reviewing the statutory provision at issue as well as the Louisiana Implied Consent Law, La.Rev.Stat. § 32:661 el seq., under which it falls, reveals the term “violation” is not explicitly defined by the Legislature. Consequently, we must construe the word according to its common and approved usage and its context. La. Rev.Stat. § 1:3; Oubre, 11-0097 at 12, 79 So.3d at 997.
A “violation” is defined as “the act of breaking, infringing, or transgressing a law,” Black’s Law Dictionary 1570 (6th ed.1990), or an “act or instance of violating ... infringement; transgression; nonobservance; as the violation of law_” Webster’s Collegiate Dictionary 1120 (5th ed.1944). In a criminal context, the generally understood meaning of the term is an act prohibited or punishable by law. By extension, the term “violation” in the context La.Rev.Stat. § 32:667(I)(l)(a) refers then to the act prohibited by La.Rev.Stat. § 14:98, operating a motor vehicle while intoxicated.
Generally, the arrest of an individual on a criminal charge is not the act prohibited or punishable by law. Rather, it is merely an allegation of the criminal act, which the State then bears the burden of proving. See, e.g., State v. Nix, 406 So.2d 1355, 1357 (La.1981)(evidence defeated basis for “alleged violation” of criminal statute); State v. Johnson, 381 So.2d 498, 501 (La.1980)(fatal defect in proof of the commission of “the alleged crime”); see also, State v. Mirambell, 361 So.2d 1208, 1208 (La.1978)(“arrest and charge for DWI offense does not constitute proof, in the absence of evidence as to the underlying offense,” of a violation of the conditions of *28 defendant’s probation to warrant revocation).
Similarly, an arrest on the charge of DWI is not an “act” prohibited or punishable by La.Rev.Stat. § 14:98; it is simply an allegation of the proscribed act of operating a vehicle while intoxicated. It logically follows, therefore, an arrest | sand charge of an individual for an alleged violation of La.Rev.Stat. § 14:98 are not sufficient to constitute an actual violation of La.Rev.Stat. § 14:98.
Moreover, the “arrest” language used in subsections (c) and (d), which apply to “[a]ny person who is arrested for a violation,” clearly illustrates the Legislature’s intent to draw a distinction between a “violation of R.S. 14:98” and an “arrest for a violation of R.S. 14:98.” Significantly, this distinction is employed throughout the Implied Consent Law. See La.Rev.Stat. § 32:666(A)(2)(“In all cases ..., a person under arrest for a violation of R.S. 14:98”)-, La.Rev.Stat. § 32:666(A)(3)(“In all cases where a person is under arrest for a violation of R.S. 14:98 ... who refuses to submit to a chemical test if he has refused to submit to a chemical test on two previous and separate occasions of any previous such violation ... ”); La.Rev.Stat. § 32:667(A)(“When a law enforcement officer places a person under arrest for a violation of R.S. 14:98 ... ”); see also, La.Rev.Stat. § 32:667.1(A)(“When a law enforcement officer places a person under arrest for a violation of R.S. 14:32.1 (vehicular homicide) ... ”).
Reading the statutes in pari materia, we find the Legislature clearly intended to differentiate between an arrest for and an actual violation of La.Rev.Stat. § 14:98. Following the logic of the lower courts, we further agree that, had the Legislature intended a second arrest and refusal to take a breath test sufficient to require an interlock device as a condition of reinstatement of a person’s driver’s license, it could have employed the “arrest” language cited in the statutory provisions above. To interpret La.Rev.Stat. 32:667(I)(l)(a) as the OMV suggests would not only defy this simple logic, but also the rule of lenity, which requires a resolution of any ambiguity be in the favor of the accused. Accordingly, we find plaintiff’s second arrest for a DWI charge alone does not constitute a “second violation of R.S. 14:98” under the provisions of La.Rev.Stat. § 32:667(I)(l)(a).
|3Because the OMV relies solely on plaintiffs arrest record, the first aggravating factor necessary for the mandatory installation of an ignition interlock device prior to the reinstatement of plaintiffs driving privileges has not been proven. Therefore, in light of his acquittal, plaintiff is entitled to have his license immediately reinstated pursuant to the explicit provisions of La.Rev.Stat. § 32:667(H)(1), which provide, in relevant part: “When any person’s driver’s license has been ... suspended ..., and the ... suspension ... is connected to a charge or charges of violation of a criminal law, and the charge or charges do not result in a conviction ..., the person charged shall have his license immediately reinstated.” Accordingly, we affirm the judgments of the lower courts, reinstating plaintiffs driver’s license without restriction.
CONCLUSION
In summary, an arrest for the charge of DWI is merely an allegation of a violation, not an actual violation of La.Rev.Stat. § 14:98. Therefore, a second arrest for the charge of DWI does not constitute “a second violation of R.S. 14:98” sufficient to require the installation of an ignition interlock device for reinstatement of plaintiffs suspended driver’s license pursuant to La. *29 Rev.Stat. § 32:667(I)(1) for his refusal to submit to a chemical breath test following his arrest.
DECREE
For the foregoing reasons, the judgment of the Court of Appeal is hereby affirmed.
AFFIRMED.
JOHNSON, J., dissents.
GUIDRY, J., concurs in the result and assigns reasons.

. La.Rev.Stat. § 32:667(B)(2)(a) provides: "If the person refused to submit to the test, his driving privileges shall be suspended as follows: (a) Except as otherwise provided in this Paragraph, one year from the date of suspension on a refusal.”